**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PETER DALY,

                              Plaintiff,               1:25-CV-00143 (AMN/PJE)

v.

JOHN MICHAEL FRANCIS, II; DISTRIBUTED
LEDGER, INC.; BOLSADX HOLDINGS LIMITED; and
LISA PADGET ARNOLD,

                              Defendants.

_____

**APPEARANCES:**                         **OF COUNSEL:**

**PETER DALY**
38 Labarge Street Front
Hudson Falls, NY 12839
Plaintiff _pro se_

**Law Offices of Carole R. Bernstein**       **CAROLE R. BERNSTEIN, ESQ.**
41 Maple Ave North
Westport, CT 06880
_Attorney for Defendants_

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On January 31, 2025, Plaintiff _pro se_ Peter Daly ("Plaintiff") commenced this action against John Michael Francis, II ("Francis"), Distributed Ledger, Inc. ("Distributed Ledger"), BolsaDX Holdings Limited ("BolsaDX"), and Lisa Padget Arnold ("Arnold") (collectively, "Defendants"). Dkt. No. 1 ("Complaint"). Plaintiff alleges common law violations related to a cryptocurrency matter. _See id._ Presently before the Court are Defendants' motion to dismiss for lack of personal jurisdiction, _see_ Dkt. No. 15 ("Motion to Dismiss"), and Defendants' motion to

sanction Plaintiff for frivolous litigation and improper purpose, *see* Dkt. Nos. 17-18 ("Motion for Sanctions").

For the reasons that follow, the Court grants the Motion to Dismiss in its entirety and denies the Motion for Sanctions.

## II.     BACKGROUND

### A.  Plaintiff's Party Allegations[1]

Plaintiff Peter Daly is a resident of New York.  Dkt. No. 1 at 8.  Plaintiff alleges that Defendants Distributed Ledger and BolsaDX are entities that have their principal place of business in Alabama.  *Id.*  Plaintiff alleges that Defendant Francis resides in Alabama and is the Chief Executive Officer of both Distributed Ledger and BolsaDX.  *Id.* at 3, 8.  Plaintiff also alleges that Defendant Arnold was "the only human being listed on the BolsaDX website" and that she resides in Alabama.  *Id.* at 8.

Plaintiff describes Defendant BolsaDX as a cryptocurrency exchange where customers could maintain a portfolio of digital currencies and engage in related cryptocurrency functions, including "deposits, withdrawals, transfers" and "trading activities."  Dkt. No. 1 at 8.  Plaintiff alleges that Defendants advertised BolsaDX "as a solution to the closing of Binance Exchange to all Americans."  Dkt. No. 21 at 2.  In conjunction, Plaintiff alleges that Binance Exchange had "announced in November 2021 that it was banning all American accounts and leaving the United States."  *Id.*

---

[1] Given Plaintiff's *pro se* status, the Court considers the factual allegations in both the Complaint and Plaintiff's briefing.  *See* Dkt. Nos. 1, 21; *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").  Insofar as Plaintiff has attempted to amend his complaint via an "amended statement of claim" attached to his briefing, the Court liberally construes that attempt as part of Plaintiff's papers opposing the Motion to Dismiss.  *See* Dkt. No. 21 at 9.

**B.  Defendants' Assertions[2]**

For their part, Defendants assert that at all relevant times, Defendant Francis was a resident of Alabama and served as the Chief Executive Officer of Distributed Ledger.  Dkt. No. 15-1 at ¶ 1.  Defendants also assert that at all relevant times, Defendant Arnold was a resident of Alabama and employed by JMF Solutions, a telecommunications company incorporated in Alabama.  Dkt. Not. 15-4 at ¶ 3.  Defendants state that Defendant Arnold was not employed, associated with, or affiliated with BolsaDX or Distributed Ledger.  Dkt. No. 15-4 at ¶ 4.

Defendants assert that Defendant Distributed Ledger is a corporation organized under the laws of Texas with its principal place of business in Texas.  Dkt. No. 15-1 at ¶ 13.  Defendants also assert that Distributed Ledger is the sole shareholder of Defendant BolsaDX, which is a company founded in 2017 and incorporated in March 2023 under the British Virgin Islands Business Companies Act of 2004, with its principal place of business in Tortola, BVI.  Dkt. No. 15-1 at ¶ 4-5.[3]

As for Defendant BolsaDX, Defendants assert that it is a cryptocurrency exchange front end, "providing support and marketing services for crypto exchange back ends hosted by Binance,

---

[2] On a Rule 12(b)(2) motion to dismiss, a court construes the pleadings in the light most favorable to the plaintiff and resolves all doubts in his favor, but "resolving all doubts in the plaintiff's favor is not the same as blindly crediting all allegations regardless of their factual support."  *Melnick v. Adelson-Melnick*, 346 F. Supp. 2d 499, 502 n. 17 (S.D.N.Y. 2004); *see also infra* Section III.  Thus, "a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists."  *SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015) (quoting *Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC*, No. 11-cv-420, 2012 WL 204102, at *2 (S.D.N.Y. Jan. 24, 2012) (crediting defendant's sworn declarations regarding their residency and principal place of business that plaintiff did not dispute) (internal quotations omitted).

[3] Despite contrary allegations in the Complaint, Plaintiff ultimately adopts Defendants' assertions of residency.  *See* Dkt. No. 21 at 3 ("Plaintiff reminds the Court that BolsaDX Exchange, located in the British Virgin Islands, appears to be owned and/or controlled by Distributed Ledger, Inc., registered in the State of Texas, which is owned principally by John Michael Francis II, located in the State of Alabama.").

serving clients in Latin America." Dkt. No. 15-1 at ¶ 4; Dkt. No. 15-5 at 9. According to Defendants, BolsaDX's front end trading platform was located in Hong Kong. Dkt. No. 15-1 at ¶ 12; Dkt. No. 15-5 at 9.

Defendants further assert that a cryptocurrency exchange back end such as Binance "is in control of managing order books, ensuring security, and facilitating communication with the front end and external services." Dkt. No. 15-5 at 9 n. 1. Binance operates "the largest cryptocurrency exchange in terms of daily trading volume" but it is "prohibited from operating in the United States due[] to regulatory issues and is specifically unavailable to New York residents." Dkt. No. 15-1 at ¶¶ 7-8.

Defendant Francis also acknowledges that BolsaDX was accessible via Virtual Private Networks, or VPNs. Dkt. No. 15-1 at ¶¶ 9, 11. A VPN routes internet traffic through a third-party server, thereby disguising a user's location. *See id.*

### C. Plaintiff's BolsaDX Account

According to Plaintiff, this action arises from events that occurred in late 2023. Dkt. No. 1 at 8-9. Plaintiff alleges that he opened a BolsaDX account in 2019[4] and that as of November 30, 2023, his account contained a portfolio of certain digital currencies, including "Ripple XRP, SFP, FRONT, BEL, SCRT, BAND, TROY and BTC." Dkt. No. 21 at 3; Dkt. No. 1 at 8. At some point before December 3, 2023, Plaintiff alleges that Defendants informed all BolsaDX account owners

---

[4] Plaintiff alleges that he opened his account in 2019, which is prior to when Binance announced that they were banning U.S. accounts in 2021 and prior to when BolsaDX was incorporated in the British Virgin Islands in 2023. Dkt. No. 21 at 2-3; *see also* Dkt. No. 15-1 at ¶ 5. However, Plaintiff also alleges that he opened his BolsaDX account "due to Binance Exchange banning all American accounts[.]" Dkt. No. 21 at 3. Plaintiff also alleges that at that time, "no personal information was required" to open the account. *Id.* The Court notes that Plaintiff makes no further allegations concerning BolsaDX's corporate form, its location, or its operations within the United States, if any, at the time he opened his account. *Compare* Dkt. No. 21 at 2-3 *with* Dkt. No. 15-1 at ¶¶ 4-13.

that they needed to withdraw their assets from BolsaDX by December 30, 2023.  Dkt. No. 21 at 8.

By December 3, 2023, Plaintiff alleges that the assets in his BolsaDX account portfolio

disappeared and the account showed a balance of $0.00.  Dkt. No. 1 at 8-9.  Then, on December

7, 2023, Plaintiff alleges that Defendants blocked his access to the "Support Center" and "Submit

a Ticket" functionality on the BolsaDX website, and that he lost access to his account altogether

on December 22, 2023, when the BolsaDX exchange disappeared.  *Id.* at 8.

Plaintiff attempted to contact Defendants in relation to these events, but did not receive any

response.  *Id.* at 8-9.  Plaintiff alleges that Defendants breached their "duty of good faith," caused

his losses, and that these circumstances are consistent with fraudulent activity known in the

cryptocurrency industry as a "rug pull."  *See id.* at 8-9.  Plaintiff claims that he is entitled to

$916,730.69 in compensatory damages stemming from the loss of the assets in his BolsaDX

account, as well as $800,000.00 in punitive damages, for a total of $1,716,730.69.  *Id.* at 9-10.

### III.    LEGAL STANDARD

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal

jurisdiction, courts must perform a two-part analysis."  *Harris v. Ware*, No. 04-CV-1120, 2005 WL

503935, at *1 (E.D.N.Y. Mar. 4, 2005).  "First, personal jurisdiction over a defendant must be

established under the law of the state where the federal court sits."  *Id.* (citation omitted).  "Second,

if jurisdiction is established under the governing statute, courts must determine whether the

exercise of jurisdiction under the relevant state law would violate the defendant's due process

rights."  *Id.* (citation omitted).

On a Rule 12(b)(2) motion, "the plaintiff bears the burden of showing that the court has

jurisdiction over the defendant."  *In re Tether & Bitfinex Crypto Asset Litig.*, 576 F. Supp. 3d 55,

86 (S.D.N.Y. 2021) (citing *In re Magenetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d. Cir.

2003).  Unless a court conducts "a full-blown evidentiary hearing," the plaintiff need only make "a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)."  *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted).  "In other words, prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith ... legally sufficient allegations of jurisdiction."  *Id.* (internal quotation marks and citations omitted).  But "to allege personal jurisdiction over a defendant, group pleading is not permitted."  *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y 2021).  Rather, a plaintiff must "establish a prima facie case of personal jurisdiction against *each* Defendant as to *each* claim asserted."  *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) (emphasis in original).

When evaluating the parties' submissions, the court will read the complaint and submissions in the light most favorable to the plaintiff.  *Daou v. Early Advantage*, *LLC*, 410 F. Supp. 2d 82, 88–89 (N.D.N.Y. 2006) (citations omitted).  However, the Court "'will not draw argumentative inferences in the plaintiff's favor' and need not 'accept as true a legal conclusion couched as a factual allegation.'"  *In re Tether*, 576 F. Supp. 3d at 86 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Therefore, Courts read *pro se*

6

submissions liberally and interpret them "to raise the strongest arguments that they suggest." *United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020) (quoting *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 145 (2d Cir. 2017) (per curiam) (internal quotation marks omitted)).

## IV.    DISCUSSION

### A.  Group Pleading

As an initial matter, a plaintiff must allege facts "to establish jurisdiction separately over each defendant." *In re Aegean Marine*, 529 F. Supp. 3d at 135.  However, Plaintiff's Complaint and briefing engages almost entirely in group pleading.  *See* Dkt. Nos. 1, 21.  Given Plaintiff's *pro se* status, the Court construes the complaint liberally and reads the allegations relevant to personal jurisdiction as applicable to each defendant, but because most of Plaintiff's allegations fail to distinguish among the Defendants regarding each claim, the Court has little basis on which to discern who did what.  *See, e.g.*, *Berdeaux*, 561 F. Supp. 3d at 397.[5]

### B.  Personal Jurisdiction

There are "two categories of personal jurisdiction: general and specific personal jurisdiction." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks and citation omitted).  General personal jurisdiction subjects a defendant to suit on all claims. *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, No. 14 Civ. 01568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015); *see also Goodyear Dunlop Tires Operations, S.A. v.*

---

[5] Plaintiff names Defendant Arnold in this action solely based on the allegation that, when he lost access to his BolsaDX account, "L. Arnold was the only human being listed on the BolsaDX website." Dkt. No. 21 at 8.  Plaintiff also concludes, "Any reasonable person would view this sole individual on the website as involved with BolsaDX, or perhaps a Principal, a Director or having binding importance in some other capacity." *Id.*  The Court notes that these allegations are particularly thin.  But because Plaintiff's failure to otherwise distinguish between Defendants does not substantially impact the Court's analysis with respect to its lack of jurisdiction over all Defendants, the Court refers to Defendants collectively throughout for simplicity.

*Brown*, 564 U.S. 915, 919 (2011).  A court has general jurisdiction over a corporation where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919).  Except in exceptional circumstances, a corporation is "'essentially at home,'… where it is incorporated or where it has its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG*, 571 U.S. at 139).

Specific personal jurisdiction subjects a defendant to suit only on claims that arise out of or relate to the defendant's conduct in the forum state. *Vasquez v. Hong Kong & Shanghai Banking Corp.*, *Ltd.*, 477 F. Supp. 3d 241, 251–52 (S.D.N.Y. 2020) (citation omitted).  The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant, when served with a 12(b)(2) motion to dismiss." *Aldinger v. Segler*, No. 04-CV-4405 (RJH), 2005 WL 2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks and citation omitted).  When sitting in diversity, a federal district court determines whether it has personal jurisdiction by looking to the law of the state in which it sits.  *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citations omitted).[6]

### C.  Specific Jurisdiction

Here, this Court lacks personal jurisdiction over each Defendant because Plaintiff has not established a *prima facie* case that this Court may exercise specific jurisdiction over these Defendants under New York state law.

Defendants are not subject to this Court's general jurisdiction because Plaintiff has not alleged that any Defendants are residents of New York or have continuous and systematic contacts

---

[6] Regarding subject matter jurisdiction, Plaintiff has adequately pled diversity jurisdiction in this case because the parties are completely diverse, and the amount-in-controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

with New York that render them at home in the state.  Dkt. No. 1 at 8; *see* N.Y. C.P.L.R. § 301; *Daimler*, 571 U.S. 117 at 127.  As for specific jurisdiction, the Court liberally reads Plaintiff's complaint as bringing this diversity action pursuant to New York's long-arm statute.  *See* Dkt. No. 21 at 1-4; N.Y. C.P.L.R. § 302(a).  Plaintiff points the Court to several cases that exhibit "a pattern of varying geography," and then argues that Defendants possess sufficient contacts with New York. Dkt. No. 21 at 2.[7]

The Court finds Plaintiff's cited cases inapplicable to the Motion.  All three cases involve either a federal statute or federal rule that provides for nationwide service of process, thereby giving the respective court jurisdiction where a Defendant has "sufficient contacts" with the United States.  *See* 7 U.S.C. § 13a-1(e); Fed. R. Bankr. P. 7004(d), (f).[8]  Here, Plaintiff does not bring his

---

[7] The first such case did not result in a court decision but yielded three consent orders in which the court found that it had personal jurisdiction pursuant to the Commodities Exchange Act, which provides for nationwide service of process. *See Commodity Futures Trading Comm'n v. Bankman-Fried*, No. 1:22-cv-10503-PKC, 2024 WL 4631204, at *9 (S.D.N.Y. Aug. 7, 2024) (finding personal jurisdiction pursuant to 7 U.S.C. § 13a-1); *Commodity Futures Trading Comm'n v. Bankman-Fried*, No. 1:22-cv-10503-PKC, 2022 WL 17936617, at *3 (S.D.N.Y. Dec. 23, 2022) (same); *Commodity Futures Trading Comm'n v. Bankman-Fried*, No. 1:22-cv-10503-PKC, 2022 WL 17884168, at *3 (S.D.N.Y. Dec. 23, 2022) (same).  Plaintiff also presents two citations that refer to a closed adversary proceeding within an ongoing bankruptcy court matter in the United States District Court for the District of Delaware.  *See Alameda Research LLC v. Bankman* (*In re FTX Ltd.)*, Ch. 11 Case No. 22-11068-KBO, Adv. Pro. No. 23-50584 (D. Del. Feb. 2, 2024) (voluntary dismissal) (unpublished).  Plaintiff does not specify a court decision or order regarding jurisdiction, but generally, federal bankruptcy courts have personal jurisdiction under Bankruptcy Rule 7004(d) and (f), which grant nationwide service of process. *See* Fed. R. Bankr. Proc. 7004(f) ("If exercising jurisdiction is consistent with the United States Constitution and laws, serving a summons or filing a waiver of service under this Rule 7004 or the applicable provisions of Fed. R. Civ. P. 4 establishes personal jurisdiction over a defendant: (1) in a bankruptcy case; or (2) in a civil proceeding arising under the Code, or arising in or related to a case under the Code.").

[8] The Court also notes that this case differs from recent federal court litigation involving Binance. *See, e.g.*, *SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 69 (D.C. Cir. 2024) (denying motion to dismiss for lack of personal jurisdiction as to Binance founder in federal securities action, holding that the SEC had adequately alleged that the founder "had 'meaningful contacts, ties, or relations[] with the United States to create a fair warning' that his activity may subject him to this Court's jurisdiction") (quoting *Lewis v. Mutond*, 62 F.4th 587, 593 (D.C. Cir. 2023).

case pursuant to any similar statute implicating a federal question or exclusive federal jurisdiction, but rather pursuant to state common law and federal diversity jurisdiction. *See* Dkt. No. 1 at 4, 8-9; Dkt. No. 21. Therefore, Plaintiff must make a *prima facie* showing that New York state law provides for personal jurisdiction over these Defendants. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007) (holding that New York's long-arm statute "does not coincide with the limits of the Due Process Clause" and as a result "[i]f jurisdiction is statutorily impermissible []' we need not reach the question of its constitutionality).

Plaintiff fails to make such a showing. Under New York Civil Practice Law and Rules § 302(a), a court may exercise personal jurisdiction over a non-New York resident who, in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
2. commits a tortious act within the state . . . ; or
3. commits a tortious act without the state causing injury to person or property within the state . . . , if he
    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
4. owns, uses, or possesses any real property situated within the state.

Plaintiff does not allege that any Defendant was ever physically present in the State of New York or owned, used, or possessed any property in New York in connection with this matter. Thus, this Court does not have jurisdiction under §§ 302(a)(2) or (4).

The Court now analyzes Plaintiff's allegations under §§ 302(a)(1) and (3).

### 1.  § 302(a)(1)

Plaintiff chiefly argues that Defendant BolsaDX had sufficient contacts with New York through its website. *See* Dkt. No. 21 at 2-3. The Court construes this argument as intended to

satisfy § 302(a)(1).

A court has jurisdiction over a defendant under § 302(a)(1) when that defendant "transacts any business" in New York and the plaintiff's cause of action arises from that business transaction. *Berdeaux*, 561 F. Supp. 3d at 399 (citing *Best Van Lines*, 490 F.3d at 246). "[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Id.* at 400 (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (quotation marks and citations omitted)). When evaluating the quality of a defendant's alleged contacts with New York to determine whether that defendant has transacted business within the meaning of § 302(a)(1), a court must assess the "totality of the circumstances." *Id.* (citing *Licci*, 673 F.3d at 62).

The Second Circuit has adopted a sliding scale of interactivity as a framework for analyzing whether, for purposes of § 302(a)(1), a defendant transacts any business in New York through a website. *Best Van Lines v. Walker*, 490 F.3d 239, 251-52 (2d Cir. 2007) (citing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)). On one end of the scale are "passive" websites that merely provide information that is accessed by individuals in New York. *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, No. 24 Civ. 7984, 2025 WL 2416401, at *5 (S.D.N.Y Aug. 21, 2025) (quotation marks and citations omitted). Such websites do not favor the exercise of personal jurisdiction. *Id.* On the other end of the scale, "fully 'interactive' websites, which are used to purposefully sell goods or services in New York, or charge membership fees to registered users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity." *Id.* (quoting *Creative Photographers, Inc.*

*v. Grupo Televisa, S.A.B.*, No. 23 Civ. 7106 (LJL), 2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024) (quotation marks and citations omitted)).

Here, Defendants argue that the BolsaDX website was merely "passive"—that is, it merely presented information to users akin to a nationally-available magazine or newspaper.  Dkt. No. 24 at 6 (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000).  The Court disagrees.  Defendants describe BolsaDX as a "cryptocurrency trading platform" that "provided support and marketing services for crypto exchange backends hosted by Binance . . . a global company that operates the largest cryptocurrency exchange in terms of daily trading volume of cryptocurrencies, i.e., buying, selling and trading digital assets."  Dkt No. 15-5 at 3; Dkt. No. 15-1 at ¶¶ 4, 12.  Defendants further explain that a "back end" is "in control of managing user accounts, processing cryptocurrency transactions, maintaining order books, ensuring security, and facilitating communication with the front end and external services."  Dkt. No. 15-5 at 3 n. 1.  In other words, the BolsaDX website was the user interface by which account holders accessed their cryptocurrency assets and conducted trades in Binance.  Thus, by Defendants' own description, the BolsaDX website was highly interactive, and its central purpose was to facilitate commercial activity.

"However, there must be 'more' than just an interactive website for a defendant to purposefully avail itself of a specific jurisdiction."  *Car Freshener Corp. v. Meta Platforms, Inc.*, 2023 WL 7325109, at *6 (N.D.N.Y. Nov. 7, 2023).  In the context of an interactive website, "the correct inquiry is whether defendant's services were targeted at New York residents, and whether New York residents used those services."  *Dow Jones v. Perplexity*, 2025 WL 2416401, at *6 (quoting *Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14 Civ 8586 (LAK), 2015 WL 5729681, at *5 (S.D.N.Y Sept. 30, 2015)) (brackets and quotations omitted).  First, Plaintiff alleges that he

opened a BolsaDX account while in New York.  Dkt. No. 21 at 2-3.  Plaintiff also argues that Defendants advertised BolsaDX's services to all Americans, including New Yorkers, as "a solution to the closing of Binance Exchange" by virtue of its very presence on the internet, making it accessible to "virtually anyone, anywhere on planet Earth with an internet connection."  *Id.*

Even assuming that these allegations are true, they do not meet the standard for solicitation sufficient to establish that Defendants targeted New York residents via its website.  Here, Plaintiff does not allege that BolsaDX, or any of the other Defendants, specifically targeted its advertising at or solicited use of its commercial services in New York through its website such that it "purposefully avail[ed] [it]self of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  *Best Van Lines*, 490 F.3d at 252 (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (quotation marks omitted)).  Even though Plaintiff alleges that he opened a BolsaDX account while present in New York, mere access does not amount to a transaction directed at New York for the purposes of the long-arm statute.  *See Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 136 (E.D.N.Y. 2000) ("[T]he mere existence of a web site accessible from New York is insufficient to establish 'solicitation' for purposes of personal jurisdiction.").  Indeed, courts have found that merely alleging general worldwide reach via the internet weighs against a finding that a defendant intended to target a specific state.  *See e.g.*, *Skrodzki v. Marcello* 810 F. Supp. 2d 501, 516 (E.D.N.Y 2011) ("The fact that the [] websites equally target New York consumers and all other consumers throughout the world means, by definition, that they are not directly soliciting New Yorkers." (citing *Telebyte*, 105 F. Supp. 2d at 136)); *see also Coll. Essay Optimizer*, 2015 WL 5729681 at *5 ("A website 'directed at the entire United States' does not transact business in New York where the operator has 'manifested no intent specifically to target New York . . . or to avail [itself] of the particular benefits of New York law.'"

(quoting *Girl Scouts of U.S. v. Steir*, 201 F. App'x 217, 219 (2d Cir. 2004)).  Thus, Plaintiff's allegation that he used BolsaDX's website in New York, without more, does not constitute a prima facie showing that BolsaDX or any other Defendant transacted business in New York.  *See Car-Freshner*, 2023 WL 7325109, at *8 ("[I]t is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 337 (2d Cir. 2016))).[9]

Plaintiff's contention that Defendants "violated an implied agreement" with Plaintiff, and thus § 302(a)(1) applies, fares no better.  *See* Dkt. No. 1 at 9.  In conclusory fashion, Plaintiff alleges an "implied agreement" without providing supporting factual allegations that plausibly show the elements necessary for a legally cognizable agreement.  *See In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 383 (S.D.N.Y. 2024) ("The elements of a breach of implied contract claim are the same as for a traditional breach of contract claim: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach.'" (quoting *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. App'x 274, 276 (2d Cir. 2018))).  Additionally, even if the Court were to construe plaintiff's allegations to plausibly show the existence of an agreement, Plaintiff has not alleged facts sufficient to show that Defendants intended for any such contract to supply goods or services in New York.  *See* N.Y. C.P.L.R. § 302(a)(1).

---

[9] Plaintiff alleges that "Defendants advertised their newly built BolsaDX Exchange on a reputable YouTube video program authored by Crypto Bitcoin Chris as a solution to the closing of Binance exchange to all Americans." Dkt. No. 21 at 2.  Assumed true, this statement may adequately allege that Defendants had sufficient contacts with the United States, but that is not enough to show that Defendants purposefully availed themselves of conducting activities in New York for the purposes of § 302(a)(1).

Therefore, the Court finds that Plaintiff has not made a prima facie showing that Defendants are subject to personal jurisdiction in New York under § 302(a)(1).

### 2.  § 302(a)(3)

Plaintiff also brings tort claims against all Defendants styled as claims for fraud and "Gross Negligence." Dkt. No. 21 at 8. The Court assesses whether these claims satisfy the jurisdictional requirements of § 302(a)(3). Having determined that Defendants do not transact business in New York, the Court accordingly finds that it does not have jurisdiction under § 302(a)(3)(i) and focuses its analysis on § 302(a)(3)(ii).

To raise a prima facie case of jurisdiction under § 302(a)(3)(ii), a plaintiff must plausibly allege that: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within New York; (4) the defendant expected or should reasonably have expected the tortious act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce." *Berdeaux*, 561 F. Supp. 3d at 404-05 (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) (citation omitted)).

Plaintiff's allegations do not satisfy the relevant provision. Because Plaintiff has not adequately alleged an injury in New York or that Defendants should reasonably have expected their conduct to have consequences in New York, the Court need not also address the other elements. *See, e.g.*, *Berdeaux*, 561 F. Supp. 3d at 405 (finding lack of personal jurisdiction under § 302(a)(3)(ii) after considering only the site of injury and defendants' reasonable expectations).[10]

---

[10] Regarding the first two elements necessary to plead a prima facie case under § 302(a)(3)(ii), a plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002) ("*Bank Brussels II*"). In some cases, courts undertaking such an analysis have also assessed whether plaintiff has adequately pled a claim under Federal Rule of Civil

### a. Site of Injury

Under New York law, a court determines the site, or situs, of an alleged financial injury by looking to "where the original critical events associated with the action or dispute took place, not where any financial loss or damages occurred." *Berdeaux,* 561 F. Supp. 3d at 405 (quoting *CRT Invs., Ltd v. BDO Seidman, LLP*, 85 A.D.3d 470, 471-72 (1st Dep't 2011)). An "original critical event" is neither the initial tort nor the final economic injury. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) ("*Bank Brussels I*"). Rather, it is "the first effect of the tort . . . that ultimately produced the final economic injury." *Id.* at 792. Thus, "[w]hen the underlying events take place outside New York, the fact that there are financial consequences in New York due to the fortuitous location of plaintiffs is not a sufficient basis for jurisdiction under Section 302(a)(3)." *Berdeaux*, 561 F. Supp. 3d at 405 (citing *Whitaker v. Am. Telecasting, Inc.*, 361 F.3d 196, 209 (2d. Cir. 2001).

In general terms, Plaintiff alleges fraud and breach of fiduciary duty occurring outside of New York. Dkt. No. 21 at 8-9. The Court infers from Plaintiff's submissions that he alleges that the situs of his injury is New York based on his residency in New York, but because Plaintiff does not plead his fraud claim with the requisite particularity, the Court cannot infer anything further about the initial tort leading to the ultimate injury, let alone any first effects arising from the alleged tort. *See id.*; *see also* Fed. R. Civ. P. 9(b). Similarly, Plaintiff's factual claims regarding "Gross Negligence" arising from Defendant's breach of "a duty of care to act in the account owner's best interests" do not attribute any legally cognizable act or omission to any of the Defendants, and the

---

Procedure 12(b)(6). *See, e.g., DH Servs., LLC v. Positive Impact, Inc.*, No. 12-CV-6153, 2014 WL 496875, at *14 (S.D.N.Y. Feb. 5, 2014). Because Plaintiff fails to make a *prima facie* showing of jurisdiction, the Court finds it unnecessary to also examine whether Plaintiff has adequately pled a tortious act as to each Defendant. *See, e.g.*, *Berdeaux*, 561 F. Supp. 3d at 405 n. 27.

Court cannot infer further regarding the alleged location of the breach or any subsequent effects leading to Plaintiff's alleged injury.  Dkt. No. 21 at 8.  Thus, because Plaintiff has merely pled that he felt the financial consequences of Defendants' allegedly tortious conduct in New York, the Court finds that Plaintiff has failed to sufficiently allege that the site of his financial injury was in New York.

### b. Reasonable Expectation

To determine whether a plaintiff has adequately alleged that a defendant "expected or should reasonably have expected" the allegedly tortious act to have consequences in New York, courts apply an objective test.  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999).  Plaintiffs must allege "concrete facts known to the defendant that would have led him to foresee being sued in New York or tangible manifestations of his intent to target New York[.]"  *Berdeaux*, 561 F. Supp. 3d at 409 (citing *Royalty Network, Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 424 (S.D.N.Y. 2009).  The test for this element "requires that a defendant foresee that its tortious acts will have *some* consequences in New York, although not necessarily the exact consequences that occurred."  *In re DES Cases*, 789 F. Supp. 552, 570 (E.D.N.Y. 1992) (citations omitted).  But "the mere likelihood that a defendant's product will find its way into New York does not satisfy this element, . . . purposeful availment of the benefit of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required."  *Id.* at 570-71 (collecting cases).

Here, Plaintiff fails to adequately allege any facts demonstrating that any of the Defendants would have foreseen being sued in New York or intended to target New York.  At most, Plaintiff argues that Defendants solicited business from New Yorkers because the they were connected to "virtually anyone, anywhere on planet Earth with an internet connection," and that because

Plaintiff's BolsaDX account used an email address ending in .edu, Defendants "could have determined [the] country and state of origin of the account at any time after the account was opened if they wished to do so." Dkt. No. 21 at 2-3. Consistent with its finding that Defendants did not transact business in New York, the Court finds these arguments unavailing. As explained above, reaching Americans through internet presence is not the same as targeting New York. Further, alleging that Defendants could have retroactively ascertained that their website reached New York at some point does not show that they purposefully availed themselves of New York such that they would have foreseen being sued there. *See, e.g.*, *Bissonnet v. Podlaski*, 138 F. Supp. 3d 616, 628 (S.D.N.Y 2015) ("Without any evidence that [d]efendants used their website or other promotional materials to interact with or solicit New York clients, the mere characterization of [d]efendants' practice as 'nationwide' does not suffice to establish purposeful availment of the privilege of doing business in New York."); *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, No. 08-CV-2715 (ENV)(RML), 2009 WL 4891764, at *10 (E.D.N.Y. Dec. 15, 2009) (finding that plaintiff failed to establish that defendant purposefully availed itself of New York pursuant to § 302(a)(3) because plaintiff merely alleged facts showing that defendant's website "would likely be visited on thousands of New York computer screens" without "evidence of a purposeful New York affiliation") (citation omitted).

In sum, Plaintiff has failed to allege any facts from which the Court can reasonably infer that New York's long-arm statute reaches any of these Defendants. Accordingly, the Court grants Defendants' motion to dismiss for lack of personal jurisdiction.

### D. Sanctions

Defendants move separately for sanctions against Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure. Dkt. Nos. 17-18. Defendants argue that Plaintiff knowingly

filed a frivolous claim and did so "to cause Defendants to incur additional and unnecessary attorney's fees[.]"  Dkt. No. 18-9 at 1-2.  Defendants argue that Plaintiff's action is frivolous because he did not withdraw his complaint after being twice apprised, once in a state court motion to dismiss and once via a safe harbor letter,[11] that such an action would fail for lack of personal jurisdiction.  Dkt. No. 18-9 at 16.  Defendants also argue that Plaintiff's correspondence with Defendants' attorney after receiving the safe harbor letter demonstrates bad faith, further justifying sanctions.  *See* Dkt.  No 18-9 at 17-19.  Plaintiff opposed Defendant's motion.  Dkt. No. 22.

A Court may impose appropriate sanctions on any attorney, law firm, or party who advances a frivolous legal argument, asserts claims without a reasonable factual basis, or presents submissions for an improper purpose.  Fed. R. Civ. P. 11(b), (c).  "Ultimately, the decision to impose Rule 11 sanctions rests in the sound discretion of the court, and 'should be imposed with caution.'" *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (citation omitted) (quoting *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)).  To that end, courts determine whether conduct is sanctionable based on a standard of objective unreasonableness—that is, the conduct must be "totally without merit or utterly lacking in support." *Ehrich v. Binghamton City School Dist.*, 210 F.R.D. 17, 26 (N.D.N.Y. 2002) (collecting cases).  When applying this standard, courts should consider the following factors: 1) whether the conduct was willful or negligent; 2) whether the conduct reflected a pattern of behavior or an isolated event; 3) whether the conduct infected

---

[11] A "safe harbor letter" refers to the safe harbor provision of Rule 11 requiring that a party moving for sanctions serve the motion on the offending party or counsel at least twenty-one days prior to filing it with the court.  *Allen v. Graham*, No. 9:16-CV-0047 (GTS/ATB), 2016 WL 7165966 (N.D.N.Y. Dec. 8, 2016).  To trigger the safe harbor period, any such letter must include the source of authority for the proposed sanctions and the specific conduct or omission on which the sanctions are based so that the subject of sanctions may withdraw, correct any errors, or prepare a defense within the safe harbor period.  *See id.* at *2-3 (citing *Star Mark Mgmt.*, *Inc. v. Koon Chung Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175-77 (2d Cir. 2012)).

the entire proceeding; 4) whether the individual engaged in similar conduct in the past; 5) whether the conduct was intended to injure; 6) the effect on the litigation in time or expense; 7) whether the responsible individual is legally trained; and 8) what amount is necessary to deter repetition by that individual and similar activity by others. *See id.*

When considering whether to sanction *pro se* litigants, the Second Circuit has instructed that courts should "consider the special circumstances of litigants who are untutored in the law." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d. Cir. 1989).  However, "a litigant's *pro se* status does not give him 'license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded dockets.'" *Spithogianis v. Haj-Darwish*, No. 07 Civ. 4609 (PAC)(JCF), 2008 WL 82188, at *9 (S.D.N.Y. Jan. 7, 2008) (quoting *Murawski*, 514 F. Supp. 2d at 590).

Considering Plaintiff's *pro se* status together with this Court's dismissal for lack of personal jurisdiction, the Court does not find that the problems with the Complaint were "patently clear" and thus declines to impose sanctions on Plaintiff at this time. *See, e.g.*, *id.* at *10 (declining to impose sanctions on *pro se* plaintiff because complaint's problems were not "so 'patently clear' to someone without legal training that it was objectively unreasonable for the plaintiff to have filed it") (quoting *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 360 (S.D.N.Y. 2005)); *see also Boyer v. United Methodist Church*, 17 Fed. R. Serv. 3d 1073 (West) (N.D.N.Y. 1990) (denying Rule 11 motion to sanction *pro se* plaintiff after dismissal for lack of personal jurisdiction: "an area of the law that has confused even those who are tutored in the law").  Further, the Court finds that Plaintiff's correspondence with Defendant's counsel does not rise to the level of improper purpose but rather demonstrates an unfamiliarity with the applicable law that weighs against sanctions. *See, e.g.*, Dkt. No. 18-9 at 12 (Plaintiff's email dated March 11, 2025: "I have no interest

in harassing anyone and have not done so. I simply want my money back, along with damages and have proceeded within the limitations of my ability to accomplish exactly that."); Dkt. No. 22 (arguing that Plaintiff's case was not "frivolous" but not citing legal authority defining "frivolous" litigation); *see also Holmes v. City of New York*, No. 19 Civ. 1628 (ER), 2020 WL 918611, at *19 (S.D.N.Y. Feb. 26, 2020) (declining to impose Rule 11 sanctions on *pro se* plaintiff because his briefing did not suggest "particular competence in 'finding and understanding the applicable law'") (quoting *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 (S.D.N.Y. 2005)).  Plaintiff is warned, however, that future litigation before this Court arising from these facts without a colorable basis for jurisdiction will expose him to the full array of sanctions under Rule 11.  *See Lacy v. Principi*, 317 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2004) (describing federal courts' inherent power to enjoin litigants from abusing the judicial process).

## V.       CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss, Dkt. No. 15, is **GRANTED** in its entirety; and further

**ORDERS** that Plaintiff's claims are **DISMISSED without prejudice**; and further

**ORDERS** that Defendants' Motion for Sanctions, Dkt. Nos. 17-18, is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 28, 2026
        Albany, NY

Anne M. Nardacci
U.S. District Judge